486 A.2d 179

**Paul Eugene HAWKINS, Jr.**

v.

**STATE of Maryland.**

**No. 74, Sept. Term, 1984.**

Court of Appeals of Maryland.

Jan. 9, 1985.

Gary S. Offutt, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Valerie Johnston Smith, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen. and Bernard A. Penner, Asst. Atty. Gen., Baltimore, on brief) for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT MENCHINE, Associate Judge of the Court of Special Appeals (retired), Specially Assigned.

MURPHY, Chief Judge.

This case involves Maryland's enhanced punishment statute, Maryland Code (1957, 1972 Repl. Vol., 1984 Cum.Supp.) Article 27, § 643B. Subsection (c) of the statute requires the imposition of a mandatory sentence of not less than twenty-five years upon any person who, under specified conditions, is convicted a third time of a "crime of violence." As originally enacted by ch. 253 of the Acts of 1975, the statute did not include daytime housebreaking as a "crime

of violence," as that term was then defined in § 643B(a). By ch. 479 of the Acts of 1982, effective July 1, 1982, the statute was amended to include daytime housebreaking as a crime of violence.[1]

In 1977, the appellant Hawkins was convicted of two separate daytime housebreaking offenses for which he served prison terms. Subsequently, in 1983, Hawkins was convicted of armed robbery, a crime of violence under the statute. The court sentenced him as a third-time offender to twenty-five years' imprisonment for the robbery offense under § 643B(c); it considered that Hawkins' two prior daytime housebreaking convictions qualified as crimes of violence for purposes of sentence under the statute, even though those offenses, when committed in 1977, were not then encompassed within the statutory definition of a crime of violence. The Court of Special Appeals affirmed the judgment, *Hawkins v. State*, 58 Md.App. 91, 472 A.2d 482 (1984), and we granted certiorari to consider appellant's challenges to the legality of his sentence.

---

**1.** In its present form, the statute reads, insofar as here pertinent:
   "(a) *'Crime of violence'*.—As used in this section, the term 'crime of violence' means abduction; arson; burglary; daytime housebreaking under § 30(b) of this article; kidnapping; manslaughter, except involuntary manslaughter; mayhem and maiming under §§ 384, 385, and 386 of this article; murder; rape; robbery; robbery with a deadly weapon; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault with intent to murder; and assault with intent to rape.
   . . . .
   "(c) *Third conviction of crime of violence.*—Any person who (1) has been convicted on two separate occasions of a crime of violence where the convictions do not arise from a single incident, and (2) has served at least one term of confinement in a correctional institution as a result of a conviction of a crime of violence, shall be sentenced, on being convicted a third time of a crime of violence, to imprisonment for the term allowed by law, but, in any event, not less than 25 years. Neither the sentence nor any part of it may be suspended, and the person shall not be eligible for parole except in accordance with the provisions of Article 31B, § 11."

## I

Hawkins contends that § 643B is ambiguous since it fails to define how the status of a predicate offense is determined, i.e., whether it is determined at the time the crime is committed, or when the defendant is convicted, or according to the statutory definition in force when a qualifying subsequent offense is committed. He argues that § 643B should be construed so as to preclude its application to him because, as a penal law, it must be strictly construed and because retroactive statutes are strongly disfavored. Hawkins contends for a construction that would fix the status of his daytime housebreaking convictions in 1977, at a time when that offense was not classified as a "crime of violence" under the statute, with the result that at sentencing in this case, he would not have "been convicted on two separate occasions of a crime of violence," as required by § 643B(c). To buttress his argument, Hawkins suggests that public policy considerations favor his construction of the statute since it avoids retroactive application with all its adverse and deleterious consequences. To otherwise construe the statute, according to Hawkins, could result in a defendant unfairly pleading guilty to daytime housebreaking "in return for a limited sentence or probation in the absence of recidivist consequences where they would go to trial or plead to a different offense were they aware that such consequences existed."

The cardinal rule of statutory construction is to ascertain and effectuate the actual legislative intent. *In re Arnold M.*, 298 Md. 515, 471 A.2d 313 (1984); *Koyce v. State, Central Collection Unit*, 289 Md. 134, 422 A.2d 1017 (1980). The primary source of the legislative intent is the language of the statute itself. *Blum v. Blum*, 295 Md. 135, 453 A.2d 824 (1983); *Haskell v. Carey*, 294 Md. 550, 451 A.2d 658 (1982). Where the statutory provisions are unambiguous, no construction is required. *Hornbeck v. Somerset Co. Bd. of Educ.*, 295 Md. 597, 458 A.2d 758 (1983); *Brown v. Brown*, 287 Md. 273, 412 A.2d 396 (1980). Thus, it is manifest that a plainly worded statute must be con-

strued without forced or subtle interpretations designed to extend or limit the scope of its operation. *Guy v. Director*, 279 Md. 69, 367 A.2d 946 (1977).

We find no merit in Hawkins' claims of ambiguity in § 643B. The purpose of that statute, as the Court of Special Appeals observed, is to protect the public from assaults upon people and injury to property and to deter repeat offenders from perpetrating other criminal acts of violence under the threat of an extended period of confinement. *Hawkins v. State, supra*, 58 Md.App. at 94, 472 A.2d 482. Punishment under such statutes is only for the new crime, being greater where the defendant habitually commits crimes of violence. *See Gryger v. Burke*, 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683 (1948); *McDonald v. Massachusetts*, 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901). Thus, the inclusion within the statute of predicate offenses committed before its effective date does not render the statute retrospective in application. On the contrary, the enhanced sentencing provisions apply only to sentences for qualifying offenses committed after the statute's effective date; the statute does not affect the sentence which a defendant received for the predicate offense and therefore is prospective only in its operation.

As pointed out in Part II of this opinion, both the Supreme Court and this Court have recognized that enhanced punishment statutes like § 643B may constitutionally include predicate offenses within their ambit without regard to when such offenses were committed—a fact which the legislative body is presumed to know when it enacts such legislation. *See Demory Brothers v. Bd. of Pub. Works*, 273 Md. 320, 326–27, 329 A.2d 674 (1974); *Macke Co. v. St. Dep't of Assess. & T.*, 264 Md. 121, 132, 285 A.2d 593 (1972). Section 643B does not explicitly or impliedly limit daytime housebreaking as a crime of violence to only such of those offenses as are committed on or after July 1, 1982, the effective date of the amendment to the statute. We think it plain that the legislature intended that

daytime housebreaking be taken into account as a qualifying crime of violence for enhanced punishment purposes irrespective of when the offense was committed or the conviction obtained. *See Garrett v. State,* 59 Md.App. 97, 474 A.2d 931 (1984); *Calhoun v. State,* 46 Md.App. 478, 418 A.2d 1241 (1980), *aff'd* 290 Md. 1, 425 A.2d 1361 (1981); *State v. Temoney,* 45 Md.App. 569, 414 A.2d 240 (1980), *vacated on other grounds,* 290 Md. 251, 429 A.2d 1018 (1981).

## II

Hawkins next argues that § 643B is an *ex post facto* law in violation of Article 1, § 10 of the United States Constitution and Article 17 of the Maryland Declaration of Rights. He asserts that § 643B is retrospective because adverse penal consequences attach to certain prior convictions, e.g., that a guilty plea or waiver of counsel to a charge not then classified as a "crime of violence" might be unknowingly or unintelligently made since a defendant could not know at the time that a mandatory term of enhanced imprisonment could be imposed for a later offense.

The consequences of which Hawkins complains do not render § 643B invalid as an *ex post facto* law. As we said in *Spielman v. State,* 298 Md. 602, 608, 471 A.2d 730 (1984):

> "An *ex post facto* law is one which imposes additional punishment to that prescribed when a criminal act was committed. *Calder v. Bull,* 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798); *Beard v. State,* 74 Md. 130, 21 A. 700 (1891)."

Section 643B does not reach back to the prior act as an impermissible *ex post facto* law. The statute does not aggravate Hawkins' prior crime of "daytime housebreaking" or make it greater than it was when committed; it neither changes Hawkins' prior punishment nor inflicts a greater punishment than the law annexed to the crime when committed.

■ Section 643B is an enhanced punishment statute similar to those found in many states, being premised on the theory that for punishment purposes the legislature may require courts to consider the persistence of the accused in pursuing a criminal course of conduct when imposing sentence. *Gryger v. Burke,* 334 U.S. 728, 68 S.Ct. 1256, 92 L.Ed. 1683, *reh. denied,* 335 U.S. 837, 69 S.Ct. 13, 93 L.Ed. 389 (1948); *Carlesi v. New York,* 233 U.S. 51, 34 S.Ct. 576, 58 L.Ed. 843 (1914); *Moore v. Missouri,* 159 U.S. 673, 16 S.Ct. 179, 40 L.Ed. 301 (1895). The punishment imposed under such statutes is not for the previous crimes; rather it is an incident of the subsequent offense for which the defendant is being tried, as well as a result of his persistent course of criminal conduct. *See Graham v. West Virginia,* 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912); *McDonald v. Massachusetts,* 180 U.S. 311, 21 S.Ct. 389, 45 L.Ed. 542 (1901). As the Supreme Court stated in *Gryger v. Burke, supra,* 334 U.S. at 732, 68 S.Ct. at 1258:

> "Nor do we think the fact that one of the convictions that entered into the calculations by which petitioner became a fourth offender occurred before the Act was passed, makes the Act invalidly retroactive or subjects the petitioner to double jeopardy. The sentence as a fourth offender or habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one."

We have heretofore rejected constitutional attacks upon a Maryland statute which increases the penalty for second and subsequent narcotics offenses. In *Torres v. Warden,* 227 Md. 649, 175 A.2d 594 (1961), *cert. denied,* 369 U.S. 890, 82 S.Ct. 1164, 8 L.Ed.2d 290 (1962), a 1951 amendment to the statute, increasing the penalty for a second narcotics offense, was held constitutional despite the fact that the first offense was committed before 1951. In *Beard v. Warden,* 211 Md. 658, 660, 128 A.2d 426 (1956), a case involving similar contentions as Hawkins', we said

"that a statute imposing a greater punishment on a previously convicted defendant does not create a new offense but only an added penalty, is prospective in operation, not retrospective, and is constitutional. *Maguire v. State*, 47 Md. 485; *Hall v. State*, 121 Md. 577 [89 A. 111]; *Gryger v. Burke*, 334 U.S. 728 [68 S.Ct. 1256], 92 L.Ed. 1683."

To like effect, *see Buscemi v. Warden*, 220 Md. 659, 152 A.2d 824 (1959); *Taylor v. Warden*, 213 Md. 646, 131 A.2d 720 (1956).

Numerous other jurisdictions have upheld the constitutionality of recidivist statutes against *ex post facto* challenges. *See Cornwell v. United States*, 451 A.2d 628 (D.C.App.1982); *Reynolds v. Cochran*, 138 So.2d 500 (Fla. 1962); *Collins v. State*, 275 Ind. 86, 415 N.E.2d 46 (1981); *State v. Williams*, 358 So.2d 943 (La.1978); *State v. Vainio*, 466 A.2d 471 (Me.1983); *Commonwealth v. Murphy*, 389 Mass. 316, 451 N.E.2d 95 (1983); *State v. Acton*, 665 S.W.2d 618 (Mo.1984); *Hollander v. Warden, Nevada State Prison*, 86 Nev. 369, 468 P.2d 990 (1970); *State v. Levey*, 122 N.H. 375, 445 A.2d 1089 (1982); *People v. Morse*, 62 N.Y.2d 205, 476 N.Y.S.2d 505, 465 N.E.2d 12 (1984); *State v. Jensen*, 333 N.W.2d 686 (N.D.1983); *State v. Banks*, 105 Wis.2d 32, 313 N.W.2d 67 (1981); *Chambers v. State*, 418 So.2d 948 (Ala.Crim.App.1982); *State v. Pendergraft*, 124 Ariz. 449, 604 P.2d 1160 (1979); *People v. Golondrina*, 159 Cal.App.3d 1199, 206 Cal.Rptr. 271 (1984); *People v. Washington*, 125 Ill.App.3d 109, 80 Ill.Dec. 554, 465 N.E.2d 666 (1984); *State v. Campbell*, 9 Kan.App.2d 474, 681 P.2d 679 (1984); *State v. Nugent*, 152 N.J.Super. 557, 378 A.2d 95 (1977). *State v. Acton, supra* and *State v. Levey, supra* were both cases in which an offender pleaded guilty to an offense prior to the enactment of an habitual offender statute. Under a subsequently enacted statute, the offender, upon conviction of a later offense, was subjected to greater punishment based on his conviction of the earlier

predicate offense. The courts there held that, in such circumstances, the offender had not been the victim of an *ex post facto* law.

We note also that the imposition of mandatory sentences upon habitual criminals under enhanced punishment statutes like § 643B has been upheld by the Supreme Court as not constituting cruel and unusual punishment[2] and as not violating due process protections.[3]

JUDGMENT AFFIRMED, WITH COSTS.

---

**2.** *Graham v. West Virginia, supra; Moore v. Missouri, supra.*

**3.** *Spencer v. Texas,* 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606, *reh. denied,* 386 U.S. 969, 87 S.Ct. 1015, 18 L.Ed.2d 125 (1967); *Graham v. West Virginia, supra.*